IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**AMOS GABRIEL HICKS**,

       **Petitioner,**

v.                                            **Case No. 1:20-cv-00665**

**DONALD F. AMES, Superintendent,
Mt. Olive Correctional Complex,**

       **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the court are Petitioner Amos Gabriel Hicks's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 2), and Respondent's Motion for Summary Judgment. (ECF No. 14). This case is assigned to the Honorable David A. Faber, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

After thorough consideration of the record, the undersigned conclusively **FINDS** that (1) there are no genuine issues of material fact and (2) Hicks is not entitled to the relief requested. Therefore, for the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's Motion for Summary Judgment, (ECF No. 14); **DENY** Hicks's Petition for a Writ of Habeas Corpus, (ECF No. 2); and **DISMISS** and **REMOVE** this case from the docket of the court.

I.      **Relevant Facts and Procedural History**

A. **Jury trial, conviction, sentencing, direct appeal**

On October 21, 2008, Hicks was indicted by a grand jury in the Circuit Court of McDowell County, West Virginia ("circuit court") on three counts, including: (1) murder in the first degree, (2) malicious assault, and (3) conspiracy. (ECF No. 14-1 at 2-3). Hicks was alleged to have conspired with and offered money to Mose Douglas Mullins, Jr. ("Mose Mullins") for the murder of Jamie Chantel Webb and for the malicious assault with intent to disable or kill Jeffrey Mullins. (*Id.*) Before trial, the circuit court considered and ruled on the admissibility of "other acts" evidence, typically referred to as 404(b) evidence. (ECF No. 14-2 at 8–10). The circuit court found, in part, that the evidence that the State offered was relevant and that the probative value of the evidence outweighed any prejudicial effect to the defendant. (*Id.* at 8–9). The circuit court also assured that it would give a limiting instruction to the jury when the State offered its evidence and granted the defense a continuing objection to the evidentiary ruling. (*Id.* at 10).

Hicks's trial began on July 20, 2009. (*Id.* at 2). In his opening statement, Prosecutor Sidney Bell alleged that Hicks had provided a gun and offered to pay $10,000 to Mose Mullins to kill Chantel Webb and Jeffrey Mullins. (*Id.* at 20–21). Prosecutor Bell put forward that Hicks was motivated by his belief that Webb and Jeffrey Mullins had broken into his home and stolen some guns from him. (*Id.*). Bell further contended that Mose Mullins owed Hicks thousands of dollars and felt he had no option other than to do what Hicks told him. (*Id.*). On May 13, 2001, Mose Mullins carried out Hicks's request, with the assistance of James Rusty Waldron, using a Ruger 9mm semiautomatic pistol provided by Hicks. (*Id.* at 21–22). Webb was killed, but Jeffrey Mullins survived,

although he was paralyzed as a result of the shooting. (ECF No. 14-4 at 172–73). Mose Mullins also shot Don Ball, who happened to be with Webb and Jeffrey Mullins at the time of the shooting, although he also survived his injuries. (ECF No. 14-2 at 22). During the trial, Mose Mullins testified that he was selling drugs for Hicks and had fallen in debt to Hicks. (ECF No. 14-3 at 28–29). Mullins then testified that Hicks offered him $5,000 to kill Webb and Jeffrey Mullins. (*Id.* at 29).

Following a four-day trial, the jury found Hicks guilty on all counts. (ECF 14-9 at 2–7). On October 7, 2009, Hicks was sentenced to life imprisonment without the possibility of parole for his conviction of first-degree murder, not less than two nor more than ten years of imprisonment for his conviction of malicious assault, and not less than one nor more than five years imprisonment for his conviction of conspiracy, with those sentences to be served consecutively. (ECF No. 14-10 at 2–3).

Hicks filed a direct appeal of his conviction with the Supreme Court of Appeals of West Virginia ("SCAWV"), claiming that (1) the circuit court erred in admitting certain Rule 404(b) evidence; (2) the evidence presented at trial was insufficient to sustain his convictions; and (3) the circuit court "erred in granting [sic] petitioner a new trial."[1] (ECF No. 14-12 at 2–3). On April 14, 2011, the SCAWV issued a *per curiam* decision finding no reversible error by the circuit court and upholding Hicks's conviction and sentence. *See State v. Hicks*, 229 W. Va. 44, 54 (2011). The SCAWV found that, based on the testimony of the witnesses in the trial, the jury was presented with sufficient evidence to support its finding that Hicks was guilty of the underlying crimes beyond a reasonable doubt. *Id.*

---

[1] While the appeal form provided three assignments of error, further briefing brought only the first two assignments of error before the SCAWV. *See State v. Hicks*, 229 W. Va. 44, 50 (2011).

### B.  State habeas petition

#### 1.  *Circuit court proceedings*

Hicks filed a *pro se* petition for a writ of habeas corpus in the circuit court on May 22, 2012, under Civil Action No. 12-C-100-S. (ECF No. 14-19). He originally asserted five grounds in support of his petition. (ECF No. 14-18 at 6–7). On July 23, 2013, Hicks filed an amendment, adding Grounds Six through Thirty-Six. (ECF No. 14-19 at 8–125). He asserted a thirty-seventh ground at an omnibus hearing on December 5, 2016. (ECF No. 14-18 at 9). Of the grounds asserted, three are relevant to the instant petition: (1) Ground Twenty-Three, "ineffective assistance of trial counsels," (ECF No. 14-19 at 81–84); (2) Grounds Thirty-Two and Thirty-Three, denial of "Due Process and Equal Protection of Law" due to the state's failure to produce transcripts of all of trial proceedings, (*Id.* at 96–112); and (3) Ground Thirty-Six, denial of a fair trial with reliable results "by the cumulative effect of numerous errors." (*Id.* at 124–125).

On October 31, 2018, the circuit court issued an order denying and dismissing Hicks's petition. (ECF No. 14-18). The circuit court found that Hicks's claim that trial counsel was ineffective for failing to negotiate or obtain a plea agreement was "not supported by law or facts." (*Id.* at 11). According to the circuit court, if Hicks "wanted to take a plea or wanted his counsel to have plea discussions, he should have had those discussions with counsel prior to trial/during trial." (*Id.* at 13). Hicks's counsel were not able to recall whether they had discussed a guilty plea with their client, but as the circuit court noted, the prosecution did not offer a plea, so there were no plea negotiations for counsel to discuss with Hicks. (*Id.* at 13–15). The circuit court also observed that in the related criminal case involving defendant James Rusty Waldon, the circuit court refused the proffered guilty plea. (*Id.* at 16).

4

The circuit court was further unpersuaded by Hicks's claim that he was denied due process and equal protection of the law when the State failed to produce transcripts of proceedings requested by Hicks's habeas counsel. (ECF No. 14-18 at 35–36). The transcripts requested by Hicks's counsel were unavailable because the court reporter with access to the recordings had died and the tapes were subsequently lost. (*Id.* at 36–38). While West Virginia's procedural rules allow for the use of statements in lieu of unavailable transcripts, according to the circuit court, Hicks "did not invoke West Virginia Rules of Civil Procedure Rule 80(e) at any time after … the parties and the Court became aware of missing tapes from the Petitioner's jury trial." (*Id.* at 38). The circuit court found that Hicks and his counsel failed to follow the protocol set forth in Rule 80(e) and caused unnecessary delay in obtaining statements from witnesses concerning the trial proceedings. (*Id.* at 38–39). The circuit court analogized Hicks's case to *State v. Graham*, 208 W. Va. 463 (2000), in which a criminal appellant mounted a due process challenge because, in the 105-page trial transcript provided to him for appeal, there were 123 unclear passages. (*Id.* at 41). "However, even with that large number of unclear passages," the SCAWV found that the transcript "in no way prejudices the defendant's right to a meaningful appeal. [The SCAWV] had no difficulty in assessing the defendant's alleged errors in light of the record." (*Id.*). As for Hicks, the circuit court noted that the proceedings for which Hicks requested transcripts—namely, voir dire, defense counsel's opening statement, "unknown proceedings from 8:04–8:43 a.m. on July 23, 2009," defense counsel's closing, and the jury instructions—"did not impact the jury's deliberation in the criminal evidence." (ECF No. 14-18 at 41–42). Instead, the court noted that the evidence and testimony of witnesses and investigators "controlled the decision-making of the jury" and had the most impact on the verdict. (*Id.*). The

circuit court also pointed out that "paper copies of the jury charge, jury instructions, and jury verdict forms were sent to the [SCAWV] as part of the direct appeal." (ECF No. 14-18 at 42).

The circuit court found no merit in Hicks's claim that his trial was unfair because of the cumulative effect of numerous errors. (*Id.* at 43). The circuit court reasoned that "the cumulative error listed from all the grounds in the various petitions do not rise to the level of granting the Habeas Corpus Petition with the burden of proof being by the preponderance of the evidence." (*Id.*). The circuit court noted that the key grounds argued at the omnibus hearing concerned whether Hicks's counsel was ineffective for failing to negotiate a plea bargain and the missing trial transcripts. (*Id.*). The circuit court reiterated that the prosecution did not discuss a plea deal with defense counsel, the victims' family opposed a guilty plea in a related case and the plea was rejected by the circuit court, and Hicks's counsel "discussed all aspects of the court proceedings, trial strategy/tactics, and how they intended [to] proceed at every step of the trial." (*Id.* at 43–44). Accordingly, the circuit court found that there was not enough evidence to meet the evidentiary burden for the claim. (*Id.* at 44). As for the missing portions of the trial transcript, the circuit court noted that the SCAWV had a sufficient transcript to uphold the jury trial's findings. (ECF No. 14-18 at 44). The circuit court found that Hicks failed to show "that the missing portions of the transcript are prejudicial and impact his case" as required to obtain relief. (*Id.*). The circuit court added that it was the "overwhelming evidence by testimony of the experts, evidence, and witness testimony" that convinced the jury to convict Hicks. (*Id.*). Accordingly, the circuit court denied Hicks's petition. (*Id.* at 46).

## 2. *Appeal to the SCAWV*

After the circuit court denied his petition, Hicks appealed to the SCAWV on April 28, 2018. (ECF No. 14-33). Hicks renewed his claim that his trial counsel was ineffective for failing to seek a plea agreement. (*Id.* at 16). He argued that the prosecutor was prepared to offer a plea agreement, and that the circuit court would have accepted the agreement. (*Id.*). Hicks also claimed that the missing transcript portions "critically" affected his appellate rights in both his direct appeal and habeas proceedings. (*Id.*). He contended that he was denied a fair trial by the cumulative effect of errors in violation of his state and federal constitutional rights. (*Id.* at 44).

The SCAWV denied Hicks's habeas corpus petition on June 3, 2020. *Hicks v. Ames*, 2020 WL 2904845, *2 (W. Va. June 3, 2020). Finding that the circuit court's order "explained why none of petitioner's grounds for relief entitled him to habeas relief," the SCAWV adopted and incorporated the circuit court's "well-reasoned" findings and conclusions. (*Id.*).

## C. Federal habeas petition

On October 8, 2020, Hicks filed the instant federal habeas petition under 28 U.S.C. § 2254. (ECF No. 2). He advances three (3) grounds for relief. (*Id.* at 10). In Ground One, Hicks asserts that his trial counsel provided ineffective assistance by failing to pursue and obtain a plea agreement from the prosecutor. (*Id.* at 17). Hicks challenges the circuit court's finding that if he "wanted to take a plea or wanted his counsel to have plea discussions, he should have had those discussions with counsel." (*Id.* at 18). He contends that it is counsel's duty, rather than Hicks's duty, to negotiate a plea agreement, and that failing to negotiate or approach the prosecution about a plea agreement "is per se ineffective assistance of counsel." (*Id.*). In his accompanying

memorandum of law, Hicks also argues that failing to seek a plea agreement constitutes a "constructive denial of the assistance of counsel" causing prejudice pursuant to *Strickland v. Washington*, 466 U.S. 668, 692 (1984). (ECF No. 4 at 18). Furthermore, Hicks claims that Prosecutor Sidney Bell testified that he would have offered a plea of voluntary manslaughter if the defense had asked for a plea. (*Id.* at 20). Hicks argues that it is clear, under the circumstances, that he would have taken the plea agreement if it had been offered. (*Id.* at 21). Hicks contends that it has been proven but for counsel's ineffective assistance in representation, the results of the criminal proceedings would have been "vastly different." (*Id.* at 22).

In Ground Two, Hicks claims that the lack of transcriptions of certain trial proceedings denied him due process and equal protection of the law. (ECF No. 2 at 20). He argues that the government's failure to produce all requested portions of the trial transcript "effectively denied the Right to Meaningful Appeal and Full, fair and complete Appellate Review." (*Id.*). Hicks contends that the incomplete transcript rendered it impossible for him to vindicate his rights on appeal and in state habeas review and notes that circuit court personnel failed to comply with state record-keeping procedure, or disclose that portions of the transcript were unavailable. (*Id.* at 23). In his accompanying memorandum of law, Hicks argues that the failure to provide all portions of the trial transcript in this matter created an "insurmountable appellate defense disability which makes it impossible" for him to file: (1) post-trial motions; (2) a direct appeal; (3) a petition for a writ of certiorari to the United States Supreme Court; (4) a state habeas petition; and (5) an appeal to the SCAWV from the denial of his habeas petition. (ECF No. 4 at 25). Hicks further claims that as an indigent defendant, he is constitutionally entitled to a copy of the transcript of his trial without cost to him pursuant to West

8

Virginia law. (*Id.* at 27). Hicks also argues that the State was "grossly derelict" by not securing the notes, tapes, and finished transcriptions. (*Id.* at 30). Hicks posits that the circuit court has a duty to retain records in a criminal trial proceeding for a period of seventy-five (75) years. (*Id.* at 31-32).

In Ground Three, Hicks claims that he was "denied a fair trial with reliable results" due to the cumulative effect of numerous errors. (ECF No. 2 at 25). Hicks asserts that the thirty-seven claims in his state habeas corpus petition indicate that his trial was unfair. (*Id.* at 26). In his accompanying memorandum of law, Hicks argues that the state court rulings denied him his federal rights and were contrary to the United States Constitution. (ECF No. 4 at 43). He insists that the thirty-seven original grounds are "evidence of errors committed," although he admits that most of his original habeas claims were "dropped" on appeal due to a lack of available evidence. (*Id.*). Hicks asks the Court to reverse his convictions, vacate his sentence, and award a new trial. (*Id.* at 44).

Respondent filed a motion for summary judgment and accompanying memorandum of law on February 10, 2021. (ECF Nos. 14, 17). He contends that Hicks's grounds for relief lack merit and should be denied. (ECF. No. 17 at 16). As to Ground One, Respondent argues that there is no constitutional right to a plea bargain. (*Id.*). According to Respondent, given that this ground does not "allege a violation of the United States Constitution, it is not cognizable under 28 U.S.C. § 2254." (*Id.*). Respondent further asserts that, notwithstanding the lack of a constitutional right to plea bargain, Hicks's claim does not satisfy the second prong of the *Strickland* standard because he cannot show that counsel's performance prejudiced him. (*Id.* at 18). According to Respondent, Hicks "cannot show that the State would have extended a plea

offer or that the victims' family members would have agreed to such an offer." (ECF No. 17 at 18). Respondent also argues that Hicks does not show that the circuit court would have accepted a plea agreement, citing the circuit court's rejection of a plea agreement in a related case. (*Id*. at 19). Therefore, Respondent posits that Hicks's claim must fail, and Respondent is entitled to judgment as a matter of a law. (*Id*.).

As to Ground Two, Respondent disputes that the State's failure to produce transcripts of all proceedings entitles Hicks to relief. (*Id*. at 19). Respondent maintains that there is no federal constitutional right to state post-conviction proceedings and so, insofar as Hicks claims that the unavailability of the transcripts "thwarted his ability to seek or effectively engage in his application for state habeas corpus relief," the claim is not cognizable under § 2254. (*Id*. at 20, 23). Furthermore, Respondent argues that there is no evidence that indigency played a part in the nonproduction of portions of the trial transcript as Hicks alleges, but that the death of the court reporter was the sole reason for the missing portions of the transcript. (ECF No. 17 at 20). He claims that Hicks did not request the now-unavailable transcripts until more than two years after his initial transcript request for direct appeal. As such, he cannot claim that he was denied meaningful appellate review. (*Id*. at 22). Respondent also argues that there is no constitutional right to a complete and totally accurate transcript. (*Id*. at 23). He cites to the Fourth Circuit's decision in *United States v. Gillis*, which explains that "[t]he lack of a record does not warrant reversal ... as long as the reviewing court is satisfied that no error occurred at trial." 773 F.2d 549, 554 (4th Cir. 1985). Respondent notes that Hicks's contentions concerning the "Record Retention Schedule" and West Virginia Code §§ 51-4-3 and 51-7-4 are matters of state law and are irrelevant to the instant federal habeas proceeding. (*Id*. at 24). In addition, Respondent contends that Hicks's appellate rights

were not affected because he was able to perfect his appeal without issue and without the transcripts later requested for his state habeas proceedings. (ECF No. 17 at 25–26). Respondent notes that the transcripts sought by Hicks were unavailable due to no fault of the State. (*Id.* at 26–27). Respondent further argues that while criminal defendants are entitled to a free transcript in a direct appeal, there is no constitutional right to a free transcript in a collateral proceeding, such as a § 2254 petition. (*Id.* at 28). He cites *Rickard v. Burton*, 2 F. App'x 469, 470 (6th Cir. 2001), which provided that "no constitutional violation occurs when a transcript does not exist due to the death of the court reporter and, consequently, the transcript is unavailable to both sides." (*Id.*). Respondent concludes that Hicks cannot show specific prejudice related to the incomplete transcripts, and their unavailability was not caused by the government; therefore, Hicks is not entitled to relief. (*Id.* at 29).

In response to Ground Three, Respondent denies Hicks's assertion that the criminal trial was unfair due to the cumulative effect of errors. (ECF No. 17 at 29). Respondent argues that Hicks faces an "enormously heavy burden under 28 U.S.C. § 2254, and his arguments in support of Ground Three fall woefully short." (*Id.* at 30). Respondent asserts that Hicks does not support his claim with facts or law, but points to his unsuccessful state court habeas filings as proof that numerous errors rendered his trial unfair. (*Id.* at 29). Respondent cites *Jeffery v. Ames*, No. 2:19-cv-00045, 2019 WL 8137165, at *37 (S.D. W. Va. Nov. 22, 2019), which provided that a "claim of cumulative error [could not] succeed as a matter of law" because "the state courts' denial of all of [petitioner's] individual claims was not inappropriate under the standard governing § 2254 petitions." (*Id.* at 30). Respondent also relies on the Fourth Circuit's decision in *Fisher v. Angeleone*, 163 F.3d 835, 852 n.9 (4th Cir. 1998), which states that "legitimate

cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error." (ECF No. 17 at 31). He adduces that Hicks has not shown evidence of federal constitutional error, and therefore the claim fails. (*Id.*).

Hicks filed a reply to Respondent's Motion for Summary Judgement on May 20, 2021, along with an accompanying memorandum of law. (ECF Nos. 23, 24). He asks the Court to deny Respondent's motion. (ECF No. 24 at 2). Hicks disputes Respondent's characterization of the events of the trial, claiming there was no instruction given "regarding 404(b) evidence" either verbally or in writing. (*Id.* at 3). Hicks clarifies that he understands that there is no constitutional right to a plea, but that his counsel was deficient for "not pursuing" a plea agreement. (*Id.* at 4-5). He relies on Prosecutor Sidney Bell's testimony that he would have "offered Gabe voluntary manslaughter if his lawyer would've come to [him]." (*Id.* at 5). Hicks argues that the first prong of the *Strickland* standard is met by examining his counsel's testimony that he did not recall having a discussion with Hicks regarding plea agreements. (*Id.* at 5-7). He claims the second prong, concerning prejudice to the defendant, is met based on the outcome of the trial, in which he was convicted of murder which carries a more severe sentence than that of voluntary manslaughter. (*Id.* at 8). Furthermore, Hicks notes that Respondent relies only on Prosecutor Sidney Bell's testimony that the "family of the victims were opposed to any sort of plea agreement." (ECF No. 24 at 13). He hypothesizes that the government did not call the victims' family members to testify at the evidentiary hearing in his state habeas case for fear that they would have stated that they did not oppose a plea agreement for voluntary manslaughter. (*Id.*). Hicks also claims that the only reason that the court rejected the plea in the related case was because the plea agreement called for a guilty plea to a misdemeanor charge rather than a felony charge. (ECF No. 24 at 14).

Furthermore, he argues that the circuit court would have accepted the plea, relying on the circuit court judge's testimony that "normally, if both sides say that's what they've agreed to, [he] normally [does not] interfere with it." (*Id.* at 15).

Hicks acknowledges that he did not realize that portions of the trial transcript were missing until after his direct appeal. (*Id.* at 16). Citing to the circuit court's order appointing counsel in his state habeas case, Hicks alleges that the circuit court was aware that some portions of the trial transcript were missing shortly after he had filed a transcript request form. (*Id.* at 18). Hicks maintains that he is only able to perfect a writ of habeas corpus with a "true and complete copy of the trial transcripts." (*Id.* at 21). Hicks contests Respondent's characterization that he failed to request the entirety of his criminal transcripts on direct appeal, claiming that he paid his appellate counsel five thousand dollars to acquire a full set of the transcripts. (*Id.* at 21–23). Hicks also argues that Respondent's contention that all of the "requested portions were transcribed and provided to [Hicks], except for a transcription of the circuit court's charge to the jury." (ECF No. 24 at 22). He claims that he was never in possession of the jury instructions, the jury charge, or the voir dire from the criminal proceeding. (*Id.*). Hicks attests that his appellate counsel did not do as he was paid when he failed to acquire the complete transcript. (*Id.* at 24). He also argues, apparently for the first time, that his appellate counsel was ineffective for failing to obtain the complete transcript. (*Id.* at 24, 26). Hicks also disputes Respondent's assertion that there is no constitutional right to a complete and total transcript, relying on *Call v. McKenzie*, 159 W. Va. 191 (1975), which states that an indigent person "is always entitled to a free transcript of the entire record of his case." (*Id.* at 24).

Hicks further asserts that failure to provide him with a complete transcript of

proceedings denies him his right to due process. (ECF No. 24 at 24–25). He contends that he has repeatedly asserted constitutional violations regarding the ineffective assistance of counsel for, as he claims, the "fact that counsel failed to do as he was paid to do … acquire a complete copy of the trial transcripts." (*Id*. at 25). He rebuffs Respondent's claim that there is no constitutional right to a transcript to prepare for post-conviction proceedings and counters that he has a constitutional right to obtain records of his criminal trial and proceedings and any related documents. (*Id*. at 28). Hicks claims that he is entitled to his judicial documents as a First Amendment right, and the denial of such documents is "reversible error and subject to having the entire conviction vacated." (*Id*.). Hicks concludes that because of the errors shown, the lost transcripts, and failure of his counsel to seek a plea agreement, his case should be reversed and remanded to the circuit court for a new trial. (*Id*. at 36). He asks the Court to look at the evidence he has provided and grant him relief. (*Id*. at 37).

## II.    <u>Standard of Review</u>

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in State custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court applies the standard set forth in § 2254(d), which provides that the habeas petition of a person in State custody "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim" is:

(1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Moreover, the factual determinations made by the state court are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary, 28 U.S.C. § 2254(e)(1). The burden of proof in a habeas action rests with the petitioner. *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002). Accordingly, to succeed on a habeas petition, the petitioner must meet a difficult standard—one "which demands that state-court decisions be given the benefit of the doubt." *Woodford,* 537 U.S. at 24. Thus, when reviewing a petition for habeas relief, the federal court uses a "highly deferential lens." *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." *Thomas v. Davis*, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have separate and independent meanings. *Williams v. Taylor*, 529 U.S. 362, 405. A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting *Williams*, 529 U.S. at 405) (internal quotations omitted). The district court may grant a habeas writ under the "unreasonable

application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." *Id.* at 300–01 (internal marks omitted).

Accordingly, the AEDPA limits the federal habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under this standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather the application must also be unreasonable." *Williams*, 529 U.S. at 365. "A state court's decision is unreasonable where it is 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Valentino v. Clarke*, 972 F.3d 560, 580 (4th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Here, Respondent moves for summary judgment. (ECF No. 14). Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "applies to habeas proceedings." *Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011) (quoting *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991)). The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail." Charles Alan Wright, Arthur R. Miller &, Mary Kay Kane, *Federal Practice and Procedure*: *Civil* § 2725 (3d ed. 2005). On the other hand, a fact is not material when it is of no consequence to the outcome, or

is irrelevant in light of the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). In addition, only genuine disputes over material facts "will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) (citing *Anderson*, 477 U.S. at 248).

Motions for summary judgment impose a heavy burden on the moving party, as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990). Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249–50).

## III. __Discussion__

To properly review the decision of a state court in a § 2254 petition, this court

must consider the factual determinations and reasoning that are being challenged. The SCAWV ruling on appeal from the denial of Hicks's state habeas petition was an "unexplained state court judgement," simply adopting and incorporating the decision of the circuit court. With respect to unexplained state court judgments, federal habeas courts should apply the following presumption: where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 797 (1991). If an earlier opinion "fairly appears to rest primarily upon federal law," it should be presumed that no prejudicial default has been invoked by a subsequent order that leaves the judgment or its consequences in place. *Id.* This presumption may be rebutted by strong evidence to the contrary. *Id.* at 798. Here, the SCAWV "adopt[ed] and incorporate[d] the circuit court's well-reasoned findings and conclusions" without providing an independent analysis of the issues presented. *Hicks v. Ames*, No. 18-1025, 2020 WL 2904845, at *2 (W. Va. June 3, 2020). Therefore, the "look-through" presumption applies. *See Grueninger v. Director, Virginia Dept. of Corrections*, 813 F.3d 517, 526 (4th Cir. 2016) ("The maxim is that silence implies consent, not the opposite—and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below.") (applying the look through presumption to a § 2254 petition following an unexplained Supreme Court of Virginia decision); *Woodfolk v. Maynard*, 857 F.3d 531, 545 (4th Cir. 2017); *Nicolas v. Attorney General of Maryland*, 820 F.3d 124, 131 (4th Cir. 2016). As such, the undersigned will assess Hicks's claims based on the habeas decision and reasoning of the circuit court, as well as the decision of the SCAWV on direct appeal, to the extent that decision is relevant to the issues before this court.

18

In his petition, Hicks asserts three grounds for relief and seeks reversal of his conviction and a new trial. Based on the following analysis, it is clear that Hicks is not entitled to relief. In order to resolve this matter, each ground will be addressed in turn.

### A.    Ground One: Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 686. While "assistance which is ineffective in preserving fairness does not meet the constitutional mandate … defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor*, 535 U.S. 162, 166 (2001). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687-88, 694.

When assessing counsel's performance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. Review of trial counsel's investigation is considered from counsel's perspective at the time, as well as the professional norms then prevailing. *United States v. Higgs*, 663 F.3d 726, 739 (4th Cir. 2011). Trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th. Cir. 1995). Courts will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all the circumstances. *Goodson v. United States*, 564 F.2d 1071, 1072 (4th. Cir. 1977).

Accordingly, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla*, 559 U.S. at 371.

Here, Hicks claims that his Sixth Amendment right to effective assistance of counsel was violated by trial counsel's failure to seek a plea agreement. (ECF No. 4 at 10). The circuit court rejected this claim, applying the federal standard derived from *Strickland* and citing *Weatherford v. Bursey*, which provides that there is "no constitutional right to a plea bargain." 429 U.S. 545, 561 (1977) (ECF No. 14-18 at 15). The circuit court also mused that if Hicks wanted to plead guilty, or wanted his counsel to engage in plea negotiations, he should have had those discussions with counsel prior to or during trial. (*Id*. at 13). Hicks argues that the circuit court's decision was unreasonable, countering that it was his counsel's duty, rather than his, to negotiate a plea agreement. (ECF No. 4 at 10). Respondent contends that the circuit court's decision was not unreasonable, as there is no federal constitutional right to a plea agreement and no evidence that Hicks's trial counsel was constitutionally deficient for failing to seek a plea agreement. (ECF No. 17 at 16).

As Hicks raises his claim of ineffective assistance of counsel in a § 2254 petition, his claim must overcome both the *Strickland* standard and the barrier imposed by § 2254(d), resulting in review that is "doubly" deferential to the decision of the state court. *Knowles v. Mirzayance*, 556 U.S. 111, 129 (2009). In *Harrington v. Richter*, the Supreme Court made clear that relief in these circumstances should be granted only sparingly. 562 U.S. at 102. The *Harrington* court clarified that the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id*. at 101. This standard of review recognizes that for the "purposes of §

2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410). "If this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102. Habeas review under § 2254(d) is intended to function as a "guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-103.

Looking first at the law relevant to Hicks's specific claim, the undersigned notes that the constitutional right to effective assistance of counsel unquestionably extends to plea negotiations. *Padilla*, 559 U.S. at 364; *Lafler v. Cooper,* 566 U.S. 156, 162 (2012). However, federal law is not clearly established that this right requires counsel, in every criminal action, to request a plea agreement from a prosecutor who has not offered one. In *United States v. Pender*, the Fourth Circuit described the nature of the defendant's right as follows:

> [T]here is no constitutional right to a plea agreement and ... the decision to initiate plea negotiations is a strategic decision within the purview of defense counsel. However, counsel is still required to be a "reasonably effective advocate" regarding the decision to seek a plea bargain. Thus, if [the defendant] Pender could show, as he alleged, that there was no reasoned strategy to his attorney's decision not to pursue a plea bargain, we conclude that Pender would have satisfied the first *Strickland* prong and shown that his attorney's actions were unreasonable.

514 Fed. Appx. 359, 361 (4th Cir. 2013). Put simply, a prosecutor is not required to offer a plea bargain if he prefers to go to trial, *Weatherford*, 429 U.S. at 561, and defense counsel has no general obligation to seek plea negotiations. *Osuji v. United States*, No. 3:14-CV-00009-MOC, 2014 WL 4895240, at *8 (W.D.N.C. Sept. 30, 2014) ('While a prepared criminal defense attorney, in his professional judgment, could have sought a plea bargain, he is not required to do so if he prefers to go to trial.") (citing *Pender,* 514

Fed. Appx. at 361).

In the absence of a *per se* rule requiring his trial counsel to pursue plea negotiations, Hicks was required to produce evidence at the state habeas proceeding showing that there was no reasoned strategy for his counsel's decision not to seek a plea bargain. This evidence would have satisfied the first prong of Strickland. To meet the second prong, Hicks was required to establish a reasonable probability that (1) he would have accepted the plea offer, and (2) the plea agreement would have been accepted without the prosecution canceling it or the trial court rejecting it. *Missouri v. Frye,* 566 U.S. 134, 147 (2012). To demonstrate a reasonable probability that he would have accepted a plea agreement, a petitioner's testimony that he would have done so must be credible. *Merzbacher v. Shearin*, 706 F.3d 356 (4th. Cir. 2013); *also Frye*, 566 U.S. at 150 (holding that Frye established prejudice based on his later acceptance of a less advantageous plea, lending credibility to his *post hoc* testimony that he would have accepted the prosecutor's original offer of a plea bargain had it been communicated to him). Moreover, even if Hicks demonstrated that the prosecution and defense would have agreed to a plea, he was also required to show that the court would have accepted the plea, given that there is no federal right to have a guilty plea accepted by a court. *Frye,* 566 U.S. at 150-51; *also Rodriguez v. Bush*, 842 F.3d 343, 346 (4th. Cir. 2016).

In *Flood v. United States*, the district court illustrates the petitioner's burden of proof in a similar context. 345 F. Supp.3d 599 (D. Md. 2018). Flood was found guilty of kidnapping resulting in death and was sentenced to life in prison. *Id.* at 604. At issue in the subsequent § 2255 proceeding was whether, in the face of overwhelming evidence of the defendant's guilt, counsel was deficient for not seeking a plea agreement. *Id.* at 612. In considering this argument, the court first noted that neither the United States

Supreme Court, nor the Fourth Circuit, had directly addressed the issue of whether an attorney had a general duty to explore the possibility of a plea agreement, making the issue one of first impression in the Circuit. *Id.* at 610-11. The court was hesitant to announce a *per se* rule applicable to every criminal case; particularly, as many defense attorneys had strategic reasons for not pursuing a plea agreement. *Id.* at 611. The court concluded that in a "narrow category" of cases like Flood's "where a defendant is facing a life sentence and the evidence of his guilt is overwhelming ... it is a fair argument that counsel, at the very least, should explore the possibility of obtaining a plea agreement with the Government." *Id.* at 612.

The court ultimately ruled, however, that even assuming the performance of Flood's counsel's was deficient, Flood could not show prejudice resulting from the decision not to seek a plea. *Id.* Specifically, the court noted that there was no evidence that Flood asked his counsel to seek an agreement, or that he ever indicated to anyone that he would have cooperated with a plea agreement. The only evidence Flood provided that he would have accepted a plea was his own "after-the-fact self-serving affidavit." *Id.* at 613.

In this case, Hicks's burden of proof is greater than the burden carried by *Flood,* because Hicks not only has to satisfy the two prongs of *Strickland* but he must also show that the state courts were unreasonable in rejecting this ground for habeas relief. Hicks simply does not meet this high bar. At the evidentiary hearing on Hicks's habeas petition, counsel testified that while they could not recall specific discussions about pursuing a plea agreement, they did engage in multiple conferences with Hicks about tactics, strategy, witnesses, and motions—both before the trial and during the trial. (ECF No. 14-27 at 95-99, 105-116). Each of Hicks's attorneys had practiced law for more than

30 years, and their practices involved a substantial amount of criminal defense work. Both agreed that plea negotiations were common in criminal cases, and that engaging in plea negotiations was part of the regular activities of a criminal defense attorney. (*Id.*). They simply could not recall what specific discussions they had with Hicks regarding a plea agreement. At least one of Hicks's counsel testified that the trial judge would generally ask the parties about plea negotiations and that counsel "probably did" discuss with Hicks the potential benefit of seeking a plea agreement. (*Id.* at 114-15). The other counsel testified that while he did not remember Hicks instructing him not to seek a plea, he did recall that Hicks "professed his innocence very strongly." (*Id.* at 107). Based on this testimony, it was reasonable for the circuit court to infer that Hicks and his counsel would have pursued the option of a plea agreement if Hicks felt the circumstances merited it. It is also important to consider that Hicks went to trial in 2009, well before the courts in *Pender* and *Flood* considered the duty of defense counsel to seek a plea bargain when one was not offered. Consequently, there was no clearly established federal law on the subject for the circuit court to follow.

Moreover, like the *Flood* case, there is no evidence here that Hicks would have accepted a plea agreement, if one was offered, except for his own self-serving assertion on habeas review. While the evidence against Hicks was sufficient to convince a jury of his guilt beyond a reasonable doubt, it would be hard to describe the evidence as "overwhelming." To begin, the charges against Hicks were not brought until almost eight years after the murder and assaults occurred, and years after two individuals were found guilty of the crimes. The prosecution's case was based largely upon the testimony of the self-professed murderer, because Hicks was not present when the shootings occurred. (ECF No. 14-2 at 20-26). This evidence was by no means so redundant and irrebuttable

24

that going to trial was a plainly futile exercise. Even in the instant petition, Hicks continues to refute the reliability of the evidence provided by the State in support of its case against him. (ECF No. 4 at 4-6). Moreover, Hicks still denies "categorically the allegations against him." (ECF No. 4 at 5). That is not to say that defense counsel can never be ineffective for failing to seek a plea agreement for clients who maintain their innocence; under federal and West Virginia law, defendants may maintain their innocence even if they strategically plead guilty to avoid the risk of trial. *North Carolina v. Alford*, 400 U.S. 25 (1970); *Kennedy v. Frazier*, 178 W.Va. 10 (1987). ("An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him."). However, the mere existence of a mechanism by which Hicks could have pled guilty does not indicate definitively that he would have done so, or that his counsel was ineffective for failing to approach the prosecution about a plea.

Respondent discounts Hicks's reliance on Prosecutor Bell's testimony that the State "probably would have" offered Hicks a plea offer had Hicks's counsel initiated plea discussions. (ECF No. 17 at 18). In *Rodriguez v. Bush*, the Fourth Circuit explained, "If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue [of ineffective assistance of counsel] ... simply does not arise." 842 F.3d 343, 347 (2016) (quoting *Lafler*, 566 U.S. at 1387). Both Respondent and Hicks acknowledge that he was never offered a plea deal. Hicks presents no evidence that he ever asked his counsel to seek a plea agreement or that he had been amenable to one, nor is there clear evidence that the offer would have been accepted by the circuit court.

25

At the evidentiary hearing before the circuit court on his state habeas petition, Hicks's defense counsel testified that he simply did not remember discussing plea options with Hicks. (ECF No. 14-27 at 107). Thus, the evidence that counsel did not discuss the possibility of a plea agreement with Hicks is as strong as the evidence that they did; counsel's testimony neither supports nor refutes Hicks's claims. It was not unreasonable for the circuit court to decide that the alleged failure of Hicks's counsel to seek a plea agreement when none was offered did not constitute ineffective assistance of counsel under Sixth Amendment standards.

Furthermore, in a companion case to Hicks's criminal case, *State of West Virginia v. James Blaine Waldron*, Case No. 01-F-130, the circuit court refused to accept a plea agreement. (ECF No. 14-18 at 16). Hicks speculates that the only reason the circuit court rejected the plea was because the plea was to a misdemeanor, and the trial court disapproved of a guilty plea to anything less than a felony. (ECF No. 4 at 16). However, on review of the circuit court's rejection of the plea, the SCAWV stated that "a court's ultimate discretion in accepting or rejecting a plea agreement is whether it is consistent with the public interest in the fair administration of justice." *State v. Waldron*, 218 W. Va. 450, 456 (2005) (quoting Syl. Pt. 4, *Myers v. Frazier*, 173 W. Va. 658 (1984)).

While it is possible the prosecution would have offered a plea had Hicks's counsel asked, and the circuit court would have accepted the plea, the inquiry under *Strickland* does not rely on hindsight but instead considers the circumstances at the time of supposedly deficient performance. *Wiggins v. Smith*, 539 U.S. 510, 523 (2003). In light of his claim of innocence, it is clear that Hicks thought the evidence was on his side at the time of his trial. Therefore, it was not unreasonable for the state courts to reject Hicks's argument based upon the failure of counsel to seek a plea agreement. As the

circuit court correctly applied the *Strickland* standard, the undersigned **FINDS** that the state court decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact.

### B.    Ground Two: Missing Parts of the Trial Transcript

Hicks claims that his rights to due process and equal protection were violated by his lack of access to the entire transcript of all proceedings. (ECF No. 4 at 22). The circuit court found that the missing portions of the transcript did not impact the jury's decision, and that the verdict was based on the witness testimony and supporting evidence. (ECF No. 14-18 at 41-42). The court also found that the incomplete transcript did not prejudice Hicks's right to a meaningful appeal. (*Id.* at 41). Hicks argues that the circuit court decision was unreasonable because it denied him the protection of "clearly established federal law" and was "contrary to federal law mandates and [the] Constitution." (ECF No. 4 at 23). Respondent argues that the circuit court's decision was not unreasonable because Hicks cannot show any specific prejudice to his right to a meaningful appeal. (ECF No. 17 at 19-20). Respondent also argues that this ground should be denied because the missing portions of the transcript were not caused by any wrongdoing by the State. (*Id.* at 29).

There is no doubt that "a criminal defendant has a right to a meaningful appeal based on a complete transcript." *United States v. Brown*, 202 F.3d 691, 696 (4th Cir. 2000) (quoting *United States v. Huggins*, 191 F.3d 532, 536 (4th Cir. 1999)). When a transcript is less than complete, the court must determine whether the alleged omissions or deficiencies justify a new trial. *Huggins*, 191 F.3d at 536. To obtain a new trial based on omissions from a trial transcript, the defendant must show that the transcript errors specifically prejudiced his ability to perfect an appeal. *United States v. Gillis*, 773 F.2d

549, 554 (4th Cir. 1985). According to *Huggins*, prejudice is present when a trial transcript is so deficient that it is "impossible for the appellate court to determine if the [lower] court has committed reversible error." 191 F.3d at 537. There is, however, no constitutionally protected right to a totally accurate transcript. *Dyches v. Martin*, No. 1:12-2838, 2014 WL 1093133, at *3 (D.S.C. Mar. 17, 2014). Furthermore, there is also no constitutional right to a trial transcript for collateral appeals. *United States v. MacCollom*, 426 U.S. 317, 323–24 (1976). In determining whether a missing portion of a transcript constitutes grounds for a new trial, the question is whether the petitioner has alleged "deficiencies in his transcripts substantial enough to call into question the validity of his criminal proceedings and the appellate process." *Dyches,* 2014 WL 1093133, at *3. "When, through no fault of the State, transcripts of criminal trials are no longer available because of the death of the court reporter, some practical accommodation must be made." *Norvell v. State of Illinois*, 373 U.S. 420, 424 (1963). The accommodations made by the government do not violate the equal protection clause of the Fourteenth Amendment unless the accommodations are "hostile or invidious." *Id.*

A review of Hicks's transcript reveals that the absence of some portions of the trial proceedings did not prevent Hicks from mounting an appeal or receiving a meaningful state habeas review. On habeas review, the circuit court concluded that the alleged missing portions of the transcript were not particularly key to the jury's deliberation of the criminal evidence. (ECF No. 14-18 at 41). The critical portions of the trial—such as, all of the witness testimony—had been transcribed and was available for appellate review. Moreover, Hicks did not request the unavailable portions of the transcript for his appeal; he only asked for them when he began his habeas review. (ECF No. 2 at 24). Therefore, the missing portions did not adversely affect the outcome of the

underlying criminal proceeding. Hicks argues that the lack of a complete transcript prevented him from raising certain issues in his post-conviction proceedings. (ECF No. 24 at 25-26). However, none of the proceedings he requested related to the claims he raised to the SCAWV. While Hicks alleges that the lack of transcripts for jury instructions prejudiced his claim that there was no instruction given "regarding 404(b) evidence" either verbally or in writing, (ECF No. 24 at 3), this assertion is readily disputed by the portion of the trial transcript that is available. During the trial, the judge instructed the jury: "Ladies and gentlemen of the jury, I need to give you a limiting instruction at this time concerning other wrongs or acts. The court instructs you that evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith." (ECF No. 14-2 at 100–101). In view of these facts, it was not unreasonable for the circuit court to determine that lack of access to a complete transcript was not prejudicial.

In his reply, Hicks asserts that he is entitled to the unavailable portions of the transcript as a First Amendment right. (ECF No. 24 at 28). He did not raise this argument in his state habeas petition and it cannot be raised now because the state court had no chance to consider it. However, even if this argument were properly before the court, Hicks does not state a cognizable First Amendment violation. While the First Amendment guarantees the public right of access to judicial documents, *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988), that right is not implicated where the transcripts sought are unavailable not because of the government's refusal to hand them over, but because the recordings from which transcripts could have been made no longer exist.

29

Hicks also claims that the missing portions of the trial transcript deny him his right to equal protection of the law. (ECF No. 4 at 22). The Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV., § 1. The clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). By all accounts, Hicks is indigent, and courts must provide indigent prisoners with the basic tools of an adequate defense or appeal when those tools are available for a price to other prisoners. *United States v. Burman*, 151 Fed. Appx. 260, 261 (4th Cir. 2005) (rejecting equal protection claim where a request for the transcript of a codefendant's trial was denied not due to the defendant's indigency but rather to avoid delaying the defendant's trial for several months while the transcript was prepared). However, it is not Hicks's indigency, but rather the impossibility of acquiring the transcripts themselves, that formed the basis of the circuit court's refusal to produce them. Nothing suggests that a similarly situated litigant would receive different treatment; accessing the transcripts would be impossible for anyone. Accordingly, Hicks's equal protection rights are not implicated in this matter.

Hicks has provided no evidence that the alleged omissions from his trial transcript specifically prejudiced him on appeal. *United States v. Brown*, 202 F.3d 691, 696 (4th Cir. 2000) (holding that "omissions from a trial transcript only warrant a new trial if the missing portion of the transcript specifically prejudices [a defendant's] appeal.") (citations and markings omitted). Hicks seeks a reversal of his convictions and a new trial based on a missing portion of his trial transcript, yet he requested the transcripts only after his unsuccessful direct appeal. Hicks himself acknowledges that

this ground was "only discovered after the appeal was already ruled upon." (ECF No. 2 at 24). The absence of the requested transcripts accordingly did not affect the outcome of the appeal. Furthermore, because there is no constitutional right to a trial transcript on collateral review, Hicks can allege no constitutional violations due to the missing portions of the transcript. The circuit court noted that, on direct appeal, the SCAWV had "sufficient transcripts to uphold the jury trial's findings." (ECF No. 14-18 at 44). The undersigned **FINDS** that state court's ruling was not unreasonable or contrary to clearly established federal law given that Hicks provided no evidence that information critical to his appeal was lost. Therefore, Hicks is not entitled to relief on this ground.

### C.    Ground Three: Cumulative Effect of Numerous Errors

Hicks asserts that his constitutional rights were violated by the cumulative effect of numerous errors during the trial. (ECF No. 4 at 42). The circuit court found that the "cumulative error listed from all the Grounds in the various Petitions from the Petitioner do not rise to the level of granting the Habeas Corpus Petition by the preponderance of the evidence." (ECF No. 14-18 at 43). Hicks argues that this decision was unreasonable because it was contrary to established federal law, and "newly developed law involving federal evidentiary standards" necessitates review and reversal. (ECF No. 4 at 43). Respondent argues that the circuit court's decision was not unreasonable because Hicks's claim of cumulative error is not supported by sufficient facts or evidence. (ECF No. 17 at 29.)

"[T]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a singular reversible error." *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (internal quotations and citations omitted). To satisfy this requirement, such errors must "so fatally infect the

trial that they violated the trial's fundamental fairness." *Id.* (quoting *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)). However, "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Fisher v. Angelone*, 163 F.3d 835, 852 n.9 (4th Cir. 1998). For cumulative error to apply, a court must first conclude that constitutional errors did in fact occur, and while harmless individually, the aggregate effect of the errors was to effectuate grave constitutional harm. *Id.*

The circuit court determined that Hicks identified no significant error; therefore, the doctrine of cumulative error did not apply. (ECF No. 14-18 at 43). This is plainly reasonable as the cumulative effect of errors cannot form the basis for habeas relief when the court also concludes that *no* significant errors occurred. Furthermore, Hicks has not identified any constitutional errors in this proceeding that could be used in a cumulative error analysis. Therefore, the undersigned **FINDS** that Hicks is not entitled to relief on this ground.

In summary, the undersigned has considered all of Hicks's claims and **FINDS** that no decision of the state court as to his claims involved a legal determination contrary to or unreasonably applying federal law or an unreasonable determination of fact; accordingly, the undersigned **FINDS** that Hicks's § 2254 petition should be dismissed.

## IV.   <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** the following:

1. Hicks's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 2), be **DENIED**;

2. Respondent's Motion for Summary Judgment, (ECF No. 14), be **GRANTED**;

3. This action be **DISMISSED, with prejudice.**

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, The parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED**:  July 7, 2021

Cheryl A. Eifert
United States Magistrate Judge