```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                   BLUEFIELD DIVISION
```

**AMOS GABRIEL HICKS,**

    **Petitioner,**

**v.**                                       **CIVIL ACTION NO. 1:20-00665**

**DONALD F. AMES, Superintendent,**
**Mount Olive Correctional Complex,**

    **Respondent.**

## MEMORANDUM OPINION AND ORDER

By standing order, this matter was referred to Magistrate Judge Cheryl A. Eifert for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Eifert submitted her Proposed Findings and Recommendation ("PF&R") on July 7, 2021, in which she recommended that this court grant respondent's motion for summary judgment, deny petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254, and dismiss and remove this matter from the court's active docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days, plus three mailing days, in which to file any objections to Magistrate Judge Eifert's PF&R. Pursuant to § 636(b)(1)), the court need not conduct a de novo review of the PF&R when a party "makes general and conclusory objections that do not direct the court to a specific error in

the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Petitioner submitted timely objections to the PF&R on July 22, 2021.

I.

Under 28 U.S.C. § 2254, Hicks is entitled to federal habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that when the issues raised in a § 2254 petition were raised and considered on the merits in State court habeas proceedings, federal habeas relief is unavailable unless the State court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal habeas Court may grant habeas relief "if the State court arrives at a conclusion opposite to that reached by this Court on a question of law or if the State court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. 362, 412-13 (2000).

A federal habeas court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles.  Id.  In determining whether the State court's decision was contrary to, or was an unreasonable application of, Supreme Court precedent, all factual determinations by the State court are entitled to a presumption of correctness.  See 28 U.S.C. § 2254(e).  A state court's decision is "contrary to" clearly established federal law when it "applies a rule that contradicts the governing law set forth" by the United States Supreme Court, or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  Williams, 529 U.S. at 405-06.  A state court's decision involves an "unreasonable application" of clearly established federal law under § 2254(d)(1) "if the state court identifies the correct governing legal rule from . . . [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  Id. at 407.  "The state court's application of clearly established federal law must be 'objectively unreasonable,' and 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

-3-

applied clearly established federal law erroneously or incorrectly.'"  Robinson v. Polk, 438 F.3d 350, 355 (4th Cir. 2006) (quoting Williams, 529 U.S. at 411).  Moreover, when "assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned."  Wilson v. Ozmint, 352 F.3d 847, 855 (4th Cir. 2003) (quotation marks omitted).

## II.

Against this backdrop, the court has carefully considered petitioner's objections and reviewed the record de novo.  The court concludes that all of Hicks's objections to the PF&R are without merit.  Given that Hicks's objections mirror his arguments considered and rejected by the magistrate judge, it would serve no useful purpose for the court to address each of those objections and go through the exercise of reiterating the findings of fact and conclusions which are already set forth in Magistrate Judge Eifert's comprehensive and well-reasoned PF&R.  Accordingly, the court **OVERRULES** Hicks's objections for the same reasons stated in the PF&R.  The court will, however, separately address a few points raised in petitioner's objections.

A.  *Counsel's Alleged Failure to Solicit Plea*

In 2009, following a four-day trial in the Circuit Court of McDowell County, West Virginia, a jury found Amos Gabriel Hicks guilty of (1) murder in the first degree; (2) malicious assault; and (3) conspiracy.  Hicks was sentenced to life imprisonment without the possibility of parole on the first-degree murder conviction, not less than two nor more than ten years for the malicious assault conviction, and not less than one nor more than five years for the conspiracy conviction.  All sentences were ordered to be served consecutively.

Hicks objects to the PF&R's conclusion that his counsel was not ineffective for failing to negotiate or obtain a plea agreement.  The standards established by the United States Supreme Court in determining whether a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Under Strickland, a plaintiff must show (1) that counsel's performance was so deficient that it "fell below an objective standard of reasonableness," and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable.  See id. at 687-92.  Counsel's performance is entitled to a  presumption of reasonableness.  See id. at 689.  Thus, a habeas plaintiff challenging his conviction on the

-5-

grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. See id. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. See id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993).

> Even without § 2254's deference, the Strickland standard "is a most deferential one." Harrington, 562 U.S. at 105, 131 S. Ct. 770. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge" and "[i]t is all too tempting to second-guess counsel's assistance after conviction or adverse sentence." Id. (internal quotation marks omitted). When Strickland's deferential standard for evaluating the Sixth Amendment claim is viewed under the extra layer of deference that § 2254 demands, the "review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." Woods, 135 S. Ct. at 1376 (emphasis added) (internal quotation marks omitted). "[F]ederal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Id.

Christian v. Ballard, 792 F.3d 427, 444 (4th Cir. 2015).

Under the second prong of Strickland, a petitioner must show that the errors were "sufficiently serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Furthermore, a court may address the two prongs in any order and a failure to establish one prong obviates a need to address the other. Id. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.").

As the PF&R noted,

In the absence of a *per se* rule requiring his trial counsel to pursue plea negotiations,[1] Hicks was required to produce evidence at the state habeas proceeding showing that there was no reasoned strategy for his counsel's decision not to seek a plea bargain. This evidence would have satisfied the first prong of Strickland. To meet the second prong, Hicks was required to establish a reasonable probability that (1) he would have accepted the plea offer, and (2) the plea agreement would have been accepted without the prosecution canceling it or the trial court rejecting it. Missouri v. Frye, 566 U.S. 134, 147 (2012). To demonstrate a reasonable probability that he would have

---

[1] "[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." Weatherford v. Bursey, 429 U.S. 545, 561 (1977); see also Welch v. United States, No. 09-2873, 2010 WL 1538866, at *3 (3d Cir. Apr. 19, 2010) ("It is well-established . . . that counsel does not have an absolute obligation to pursue plea negotiations in every case."); Robles-Pantoja v. United States, Cause No. DR-09-CR-088, 2015 WL 13534221, at *4 (W.D. Tex. Sept. 30, 2015) ("Every case the Court has found that has considered the question has ruled that counsel's failure to seek a plea agreement either cannot, as a matter of law, constitute ineffective assistance of counsel, or at least did not, under the circumstances. Most courts treat it as a non-starter on the argument that because there is no duty to initiate plea negotiations or request a plea agreement, failing to do so cannot constitute deficient performance under the first prong of Strickland."); United States v. Alvarado, No. 07cr2466 JM, 2011 WL 2213717, at *4 (S.D. Cal. June 1, 2011) ("Defendant cites no authority that a defense attorney has a duty to initiate plea negotiations. This court could not locate any authority obligating defense counsel to seek a plea agreement on the defendant's behalf. . . . Defendant is not entitled to relief because trial counsel was under no duty to initiate plea negotiations, nor required to request a plea agreement from the Government prosecutor. Moreover, even if trial counsel had made a plea agreement request, the prosecutor is not obligated to offer a plea bargain."); United States v. Cabaccang, Criminal No. 97-00095, 2010 WL 3000196, at *13 (D. Guam July 28, 2010) ("Because trial counsel was under no duty to initiate plea negotiations, he was not required to request a plea agreement from the Government prosecutor.").

> accepted a plea agreement, a petitioner's testimony
> that he would have done so must be credible.
> Merzbacher v. Shearin, 706 F.3d 356 (4th Cir. 2013);
> also Frye, 566 U.S. at 150 (holding that Frye
> established prejudice based on his later acceptance of
> a less advantageous plea, lending credibility to his
> post hoc testimony that he would have accepted the
> prosecutor's original offer of a plea bargain had it
> been communicated to him). Moreover, even if Hicks
> demonstrated that the prosecution and defense would
> have agreed to a plea, he was also required to show
> that the court would have accepted the plea, given that
> there is no federal right to have a guilty plea
> accepted by a court. Frye, 566 U.S. at 150-51; also
> Rodriguez v. Bush, 842 F.3d 343, 346 (4th Cir. 2016).

PF&R at 22. As Magistrate Judge Eifert pointed out, Hicks not only had "to satisfy the two prongs of Strickland but he must also show that the state courts were unreasonable in rejecting this ground for habeas relief." Id. at 23. And, as she rightly concluded, "Hicks simply does not meet this high bar." Id.

First, there was no evidence that Hicks ever asked his trial counsel to seek a plea agreement. At the state court evidentiary hearing, trial counsel testified that while they could not recall specific discussions with Hicks about pursuing a plea agreement, they did meet with Hicks multiple times about trial tactics, strategy, witnesses, and motions. Second, there is no evidence that Hicks would have accepted a plea agreement had one been offered except for his self-serving assertion on habeas review. Third, there is no clear evidence that the court would have accepted a plea agreement in this case, especially given its

rejection of a a plea agreement in a companion case. As Magistrate Judge Eifert summed it up, "[w]hile it is possible the prosecution would have offered a plea had Hicks's counsel asked, and the circuit court would have accepted the plea, the inquiry under Strickland does not rely on hindsight but instead considers the circumstances at the time of the supposedly deficient performance. . . . Therefore, it was not unreasonable for the state courts to reject Hicks's argument based upon the failure of counsel to seek a plea agreement." Id. at 26; see also Rosin v. United States, Nos. 8:09-CV-1158-T-24MAP, 2013 WL 6231372, at *6-9 (M.D. Fla. Dec. 2, 2013) (no Strickland prejudice in counsel's failure to solicit a plea offer from the government where petitioner never "expressed an interest in pleading guilty or even considered doing so prior to filing his § 2255 motion," never asked his counsel to seek a plea agreement, and there is no evidence that the court would have accepted any agreement).

This court cannot conclude that the state court's decisions in this regard were contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or that they involved an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Based on the foregoing, Hicks's objection is **OVERRULED**.

B.  *Missing Transcripts*

During the habeas proceedings in state court, it was discovered that certain portions of Hicks's trial transcript were unavailable due to the death of the court reporter. Apparently, the court reporter had stored the tapes at her home and her husband threw them out after she died.

The court need not decide whether "the court reporter violated the law in taking the only copy of electronic recordings to her home." ECF No. 29 at 10. Rather, the issue before this court is whether the unavailability of certain of Hicks's trial transcripts entitles him to habeas relief. As Magistrate Judge Eifert explained, it does not.

As she noted:

> A review of Hicks's transcript reveals that the absence of some portions of the trial proceedings did not prevent Hicks from mounting an appeal or receiving meaningful state habeas review. On habeas review, the circuit court concluded that the alleged missing portions of the transcript were not particularly key to the jury's deliberation of the criminal evidence. . . . The critical portions of the trial—such as, all of the witness testimony—had been transcribed and were available for appellate review. Moreover, Hicks did not request the unavailable portions of the transcript for his appeal; he only asked for them when he began his habeas review. . . . Therefore, the missing portions did not adversely affect the outcome of the underlying criminal proceeding. Hicks argues that the lack of a complete transcript prevented him from raising certain issues in his post-conviction proceedings. . . . However, none of the proceedings he requested related to the claims he raised to the SCAWV.

> While Hicks alleges that the lack of transcripts for jury instructions prejudiced his claim that there was no instruction given "regarding 404(b) evidence" either verbally or in writing, . . . this assertion is readily disputed by the portion of the trial transcript that is available. During the trial, the judge instructed the jury: "Ladies and gentlemen of the jury, I need to give you a limiting instruction at this time concerning other wrongs or acts. The court instructs you that evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith." . . . In view of these facts, it was not unreasonable for the circuit court to determine that lack of access to a complete transcript was not prejudicial.

PF&R at 28-29.  Given that there is no constitutional right to transcripts on collateral review of a conviction, see United States v. MacCollom, 426 U.S. 317, 323-24 (1976), and the absence of the transcripts did not affect Hicks's appeal, see Bransford v. Brown, 806 F.2d 83, 86 (6th Cir. 1986),[2] this court cannot conclude that the state court's decisions in this regard were contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or that they involved an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  As the Supreme Court

---

[2] There is a difference between the function of a trial transcript on direct appeal versus in postconviction proceedings. Bush v. Secretary, Florida Dept. of Corr., 888 F.3d 1188, 1196 (11th Cir. 2018) (noting that the evidentiary role of a trial transcript for a state-court post conviction proceeding "is different in kind than the role a trial transcript plays on direct appeal, where it is potentially indispensable for identifying trial-court errors and conducting meaningful appellate review.").

has made clear, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). Hicks cannot make such a showing.

Nor can Hicks convert the missing transcripts into an ineffective assistance of counsel claim. See Brisbane v. Maryland, Civil Action No. JFM-11-3184, 2012 WL 1883759, at *7 (D. Md. May 21, 2012) ("Petitioner failed to show how a missing transcript impacted on the fairness of his trial. To the extent petitioner is attempting to assign error to appellate counsel's performance in failing to include in the record the motions transcript, he has failed to state how the transcript was relevant to the issues raised on appeal.").

Finally, there is no merit to Hicks's claim that his First Amendment right of access to the courts has been violated. "Access to the courts claims generally assert a right to something that the state could provide, or they involve state interference with individuals' ability to challenge their convictions." Bush, 888 F.3d at 1195 n.16. In this case, the transcripts were unavailable to everyone and the State was not at

fault.  See id. ("Here, portions of Bush's trial transcripts were lost through no fault of the State, and the State had no power to conjure the missing portions.").

   C.   *Cumulative Error*

For the reasons expressed in the PF&R, the objection regarding the cumulative effect of numerous errors is **OVERRULED**.

                              III.

Hicks seems to think that he was entitled to a perfect trial.  See ECF No. 29 at 10 ("Although defense counsel had moments of above average performance, the failures of counsel tarnished any glint of success.").  He was not.

> Criminal defendants in this country are entitled to a fair, but not a perfect trial.  "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial," and the Constitution does not demand one.  United States v. Hasting, 462 U.S. 499, 508, 103 S. Ct. 1974, 1980, 76 L. Ed.2d 96 (1983).  This focus on fairness, rather than on perfection, protects society from individuals who have been duly and fairly convicted of crimes. . . .
>
> With this in mind, the Supreme Court has recognized that most errors do not automatically render a trial unfair. . . .

Sherman v. Smith, 89 F.3d 1134, 1137 (4th Cir. 1996).

"While the purpose of a federal habeas proceeding is to search for violations of federal law, in the context of a

-14-

prisoner 'in custody pursuant to the judgment [of] a State court,' . . . not every error justifies relief." Harden v. Shinn, CV-19-513-PHX-JJT (JFM), 2021 WL 3081371, at *14 (D. Ariz. Jun. 11, 2021) (quoting 28 U.S.C. § 2254(d) and (e)).  To that end, "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (internal citation and quotation omitted). There were no such extreme malfunctions in Hicks's case.

Petitioner's objections are **OVERRULED**.  The court **ADOPTS** the findings and conclusions contained in Magistrate Judge Eifert's PF&R, **GRANTS** respondent's motion for summary judgment, **DENIES** petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254; and **DISMISSES** this matter and directs the Clerk to remove it from the court's active docket.

Additionally, the court has considered whether to grant a certificate of appealability. See 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable.

Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied in this instance.  Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion to all counsel of record and to petitioner, pro se.

**IT IS SO ORDERED** this 29th day of September, 2021.

ENTER:

*David A. Faber*

David A. Faber
Senior United States District Judge